UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.1:20-cv-21430

ELISA M. KABELIS, as Personal
Representative of the Estate of
JOSEPH KABELIS,

    Plaintiff,
v.

NCL (BAHAMAS) LTD.,
a Bermuda Company d/b/a
NORWEGIAN CRUISE LINE,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

COMES NOW the Plaintiff, ELISA M. KABELIS, as Personal Representative of the Estate of JOSEPH KABELIS ("Decedent"), by and through undersigned counsel and sues the Defendant, NCL (BAHAMAS) LTD., and alleges as follows:

**GENERAL ALLEGATIONS**

1. This is an action for damages which exceed Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to 28 USC §1332.

2. The Plaintiff, ELISA M. KABELIS, is the widow and survivor of JOSEPH KABELIS and the duly appointed Personal Representative of the Estate of JOSEPH KABELIS ("JOSEPH KABELIS"), deceased. Attached hereto and made a part hereof as Exhibit 1 is a copy of the "Order Authorizing Issuance of Letters of Supervised Administration" issued on March 12, 2020, by the Porter County Superior Court, Probate Division, of Valparaiso, Indiana.

3. At all times material the Plaintiff, ELISA M. KABELIS, as Personal Representative of the Estate of JOSEPH KABELIS, was and is a resident and citizen of the State of Indiana.

4. ERICA KABELIS, JOSEPH KABELIS, and ADRIANA KABELIS are Decedent's children and are citizens of Indiana.

5. At all times material, the Defendant, NCL (BAHAMAS) LTD., hereafter referred to as "NCL", was and is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

6. At all times material, Rowena Espinosa, R.N., Jeffrey Abrigo, R.N., and Aron Lipat, R.N. (collectively referred to, together with the ship's physicians and possibly other staff members not listed here involved in the treatment, or lack thereof, of JOSEPH KABELIS, as the ship's "nurses") were employees or agents of the Defendant, NCL, and were at all times material acting within the scope and course of their employment or agency with NCL.

7. At all times material, Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa (collectively referred to as the ship's "physicians" or "doctors") were employees or agents of the Defendant, NCL, as the ship's physicians and were at all times material acting within the scope and course of their employment or agency with NCL.

8. At all times material, Dr. Suvahani and Dr. Caje were agents of the Defendant, NCL, and were at all times material acting within the scope and course of their agency with NCL.

9. At all times material, the Defendant, NCL, was the owner and/or operator of the cruise ship *NCL Joy*.

10. On September 21, 2019, the decedent, JOSEPH KABELIS, was a passenger on the *NCL Joy*.

11. On that date, JOSEPH KABELIS lost consciousness and collapsed in the Cagney Steakhouse restaurant on the *NCL Joy*.

12. Another passenger who was a doctor and/or other medical professional saw this happen, and immediately began administering emergency care, and said to the cruise ship staff that an automated external defibrillator ("AED") was needed, but the crew continued to serve dinner in restaurant.

13. An emergency code was not called and/or issued until approximately fifteen minutes or longer after the incident, and the ship doctor and/or ship medical staff did not arrive until approximately at least twenty minutes since Decedent first showed signs of having a seizure.

14. Upon information and belief, the ship medical staff was not adequately prepared and/or set up to treat JOSEPH KABELIS when it finally arrived.

15. Furthermore, the ship's crew did not have the area adequately cleared of passengers other than passengers who were helping.

16. JOSEPH KABELIS was subsequently pronounced dead after the ship medical staff failed to resuscitate him.

17. JOSEPH KABELIS is survived by his widow, ELISA M. KABELIS, who was dependent upon him for financial support and services until his death. He is also survived by his daughters, ERICA KABELIS and ADRIANA KABELIS, and his son, JOSEPH KABELIS.

## COUNT I: NEGLIGENT MEDICAL CARE AND TREATMENT VIA EMPLOYEES OR ACTUAL AGENTS

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

18. The Defendant owed a duty to JOSEPH KABELIS to provide prompt and appropriate medical care when he lost consciousness and collapsed in the Cagney Steakhouse restaurant on the *NCL Joy*.

19. The Defendant, NCL, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly assess the condition of JOSEPH KABELIS;

(b) in failing to timely and appropriately treat JOSEPH KABELIS, including by taking an unreasonably long amount of time for its medical staff to attend to him and to administer an AED;

(c) in failing to adequately prepare or set up to treat JOSEPH KABELIS when it's medical staff finally arrived;

(d) in failing to adequately obtain consultations with appropriate specialists;

(e) in failing to have an AED that was reasonably accessible during an emergency;

(f) in deviating from the standard of care for patients in JOSEPH KABELIS's circumstances; and

(g) in failing to have the area adequately cleared of passengers other than passengers who were helping.

20. NCL acknowledged through its hiring and holding out of its medical personnel, including Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, and all nurses, that they acted for NCL; Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, and the nurses manifested the acceptance of that undertaking by providing care to NCL's passengers, and NCL controlled or had the right to control the medical personnel's actions, as more fully set forth infra and supra.

21. NCL directly paid the medical personnel for their work in the ship's medical center and for their work otherwise treating its passengers.

22. The medical center was created, owned and operated by NCL.

23. NCL hired and had the right to fire its medical personnel, including Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, as well as the nurses.

24. As a direct and proximate result of the negligence of the Defendant through its employees/agents, as described above, JOSEPH KABELIS died.

25. Had JOSEPH KABELIS received the appropriate care and treatment, he more likely than not would have survived.

26. As a result of the negligence of the Defendant, through its employees/agents as heretofore described, the Estate of JOSEPH KABELIS has become obligated to pay significant medical bills and other expenses.

27. As a result of the negligence of the Defendant, as heretofore described, ELISA KABELIS, the widow of the decedent, has lost his social security, medical insurance, and the value of his services and incurred expenses for medical care, funeral services and interment.

28. The Defendant's negligence proximately caused JOSEPH KABELIS's death.

WHEREFORE, the Plaintiff, ELISA M. KABELIS, as Personal Representative of the Estate of JOSEPH KABELIS, demands judgment against the Defendant, NCL (BAHAMAS) LTD., for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and JOSEPH KABELIS's survivors, ELISA KABELIS, ERICA KABELIS, JOSEPH KABELIS, and ADRIANA KABELIS, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT II: NEGLIGENCE (VICARIOUS LIABILITY OF NCL BASED UPON APPARENT AGENCY)

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

29. The Defendant owed a duty to JOSEPH KABELIS to provide prompt and appropriate medical care when he lost consciousness and collapsed in the Cagney Steakhouse restaurant on the *NCL Joy*.

30. The Defendant, NCL, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly assess the condition of JOSEPH KABELIS;

(b) in failing to timely and appropriately treat JOSEPH KABELIS, including by taking an unreasonably long amount of time for its medical staff to attend to him and to administer an AED;

(c) in failing to adequately prepare or set up to treat JOSEPH KABELIS when it's medical staff finally arrived;

(d) in failing to adequately obtain consultations with appropriate specialists;

(e) in failing to have an AED that was reasonably accessible during an emergency;

(f) in deviating from the standard of care for patients in JOSEPH KABELIS's circumstances; and

(g) in failing to have the area adequately cleared of passengers other than passengers who were helping.

31. At all times material, the Defendant, NCL, held out its medical staff, including its doctors and nurses, as its apparent agents who work in NCL's "medical centers" on the vessel. The Defendant, NCL, promotes its medical staff and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel. That NCL held out its staff, including Rowena Espinosa, R.N., Jeffrey Abrigo, R.N., and Aron Lipat, R.N., as well as Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, as being its direct employees or its actual agents.

32. That the Defendant, NCL, promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce passengers such as

JOSEPH and ELISA KABELIS to cruise on its ships.

33. That NCL manifested to JOSEPH and ELISA KABELIS in this case that its medical staff, including Rowena Espinosa, R.N., Jeffrey Abrigo, R.N., and Aron Lipat, R.N., as well as Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, were acting as its apparent agents in various ways, including but not limited to the following:

(a) the doctors and nurses worked at what the Defendant describes in its advertising as its "medical centers";

(b) that the "medical centers" are owned and operated by NCL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

(c) that the passenger is billed directly by NCL through the passengers' Sign and Sail Card, whereas the "medical staff', including the doctor and nurse, are paid salaries by NCL, to work in the "medical centers"; and

(d) that NCL has the right to hire and fire the physicians and nurses, including Rowena Espinosa, R.N., Jeffrey Abrigo, R.N., and Aron Lipat, R.N., as well as Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa.

34. The medical staff in this case, including Dr. Meneleo Roy Villaruel Gayomali, Dr. Bogdan Mazuruk, and Dr. Adrian La Rosa, as well as Rowena Espinosa, R.N., Jeffrey Abrigo, R.N., and Aron Lipat, R.N., were required by NCL to wear NCL uniforms which include name tags, and which display the NCL name and logo.

35. Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line. The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to JOSEPH and ELISA KABELIS, that the shipboard physicians and medical staff work for the benefit of the Defendant. These actions and conduct of the cruise line include but are not limited to the following:

(a) The Defendant controls cruise line physicians attire, similar to other crewmembers;

(b) The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private

    furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

(c) The Defendant cruise line requires that the ship's physicians sail with the ship;

(d) The Defendant cruise line provides the onboard Medical Center;

(e) The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

(f) The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff, and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

(g) The ship's physicians represented themselves to passengers that they are employees of Defendant, NCL;

(h) The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

(i) The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships; and

(j) The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

36. The ship's physicians are considered to be Officers on board the vessel and members of the crew, and were introduced to the passengers as the ship's Officers.

37. Both the ship's doctors and the nurses were held out to the passengers by NCL as members of the ship's crew.

38. The Defendant put the ship's physicians and nurses under the command of the ship's superior officers, including the Master of the ship.

39. The cruise line represents to immigration authorities that the physicians and nurses are members of the ship's crew.

40. Both the ship's doctors and nurses are permitted to eat with the ship's crew.

41. The ship's physicians and nurses provide medical services on the ship and JOSEPH KABELIS had no alternative to the ship's medical care.

42. Based on the foregoing, ELISA KABELIS reasonably believed that the ship's nurses and doctors were acting as direct employees or actual agents on behalf of the Defendant, and was never given any reason to believe otherwise.

43. JOSEPH and ELISA KABELIS relied to their detriment on their belief that the physicians and nurses were direct employees or actual agents of the Defendant in that they would not have gone on the subject cruise had they believed that the physicians and nurses were not direct employees or actual agents of the Defendant.

44. As a result of JOSEPH and ELISA KABELIS 's reliance upon the ship's medical staff, JOSEPH KABELIS was not properly treated, such that when he collapsed, the subsequent medical treatment and intervention was untimely, and he died.

45. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physicians and/or nurses under the theory of apparent agency.

WHEREFORE, the Plaintiff, ELISA M. KABELIS, as Personal Representative of the Estate of JOSEPH KABELIS, demands judgment against the Defendant, NCL (BAHAMAS) LTD., for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and JOSEPH KABELIS's survivors, ELISA KABELIS, ERICA KABELIS, JOSEPH KABELIS, and ADRIANA KABELIS, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, ELISA M. KABELIS, as Personal Representative of the Estate of JOSEPH KABELIS, demands trial by jury on all issues so triable.

Dated: April 2, 2020.

By: */s/Spencer Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P: (305) 441.0440
F: (305) 441.0198
*Attorneys for Plaintiff*